NEW YORK,
May, 1835.

Van Alstyne
v.
Spraker.

VAN ALSTYNE and wife *vs.* DANIEL SPRAKER.

VAN ALSTYNE *vs.* GEORGE SPRAKER.

A devise of lands, where there are no words of *perpetuity*, gives only a *life estate*; and *a fee* will not be *implied* from a direction to the devisee to *pay the debts* of the testator, where such payment is not made a *condition* to the devise, or declared a *personal charge* upon the devisee.

A plaintiff in ejectment may recover a *less estate* than he claims in his declaration, and a verdict may be rendered in his favor for *an undivided part*, although in his declaration he claims the whole of certain premises.

These were actions of *ejectment*, tried at the Montgomery circuit before the Hon. ESEK COWEN, one of the circuit judges—the first cause in May, 1833, the second having been previously tried in November, 1832.

In the *first above entitled cause*, the plaintiffs, *in right of the wife*, as one of the *heirs at law* of *Cornelius M. Van Alstyne*, deceased, claimed to recover an undivided part of the premises in question. Cornelius M. Van Alstyne died seized of the premises in question in 1791 or 1792, leaving three sons and two daughters, one of which daughters was the wife of the plaintiff, Van Alstyne. One of the sons, after the decease of his father, and before the commencement of this suit, died without issue. The declaration contained two counts : in one claiming and undivided *fourth* part of the premises in fee, and in the other claiming an undivided *fifth* part. The defendant, in defence of the action, relied upon title derived by conveyance, with covenant of warranty, from *Martin Van Alstyne*, one of the sons of *Cornelius M. Van Alstyne*, who, he contended, had an *estate in fee* in the premises in question under the will of his father. Cornelius M. Van Alstyne's will bears date 12th July, 1787 ; and by it the testator gives to his *wife* all the household goods and moveable effects, and directs that she shall be *maintained out of his estate during her lifetime*. He next gives *thirty shillings* to his eldest son, *Martin*, to cut off his right of primogeniture. He *directs all his*

*just debts to be paid by his two sons, Martin and Cornelius.* Next he gives to his son *Daniel,* and to *his heirs* and assigns forever, certain premises then being in the actual possession of Daniel, charging him with the support of a relative, and directing him to pay certain legacies to certain grand-daughters of the testator, children of one of his daughters, and to pay up a certain bond. Then follow these devises: " Item. I give and devise unto my son *Martin Van Alstyne* that place or lot," &c. particularly describing certain lands. " Item. I give and devise unto my son *Cornelius C. Van Alstyne* all my low lands, lying," &c. particularly describing the same ; " and the remainder of my bush lands, lying on the south side of said creek, joining Morrison's lot, to be equally and honestly divided between my said two sons, Martin and Cornelius. Item. And I will, that my grist-mill, and all its improvements and appurtenances, be honestly and equally divided, share and share alike, between my two sons, Martin and Cornelius." The testator next gives to his daughter *Cornelia,* (one of the plaintiffs in these causes,) and to *her heirs* forever, a lot of 66 acres of land, charging her with the payment of a legacy of £50 to each of his sons, Martin and Cornelius. He then makes a provision, that if his wife shall die without disposing of what is given to her by the will, that the same shall be divided between his sons and daughters in a particular manner, and concludes by appointing his friend, R. Van Everi, and *his two sons, Martin and Cornelius,* " executors and overseers of this my last will and testament, to see the same performed." The premises in question are part of the premises devised to *Martin Van Alstine,* who, after the death of the testator, took possession of the portion devised to him. He died 34 or 35 years previous to the trial, but before his death *conveyed in fee* the premises devised to him. The defendant proved, that after the death of the testator, his sons, *Martin* and *Cornelius,* paid a bond debt due from the testator of the amount of £231, and also proved the payment of various other debts due from the testator. The plaintiffs proved, that previous to the commencement of this suit, they demanded of the defendant possession of their undivided share of the premises in question, and that he refused to yield up the

NEW YORK,
May, 1835.

Van Alstyne
v.
Spraker.

same. The counsel for the plaintiffs then insisted, that by the devise in the will, Martin Van Alstyne took only *an estate for life* in the premises devised to him, and that consequently the plaintiffs were entitled to recover. Whereupon, by consent of parties, a verdict was entered in favor of the plaintiffs for an undivided fifth part of the premises in question, subject to the opinion of this court, upon the question whether Martin Van Alstyne took an estate in fee, or for life only, in the premises in question. A case was accordingly settled, presenting the above facts.

The second above entitled cause was in the name of *Nicholas Van Alstyne* (the husband of *Cornelia*) alone as plaintiff. In his declaration, instead of claiming *an undivided part*, he claimed the *whole* of certain premises ; and instead of claiming an estate for life only, he claimed the fee. In addition to the facts stated in the other cause, it was shown in this cause that the plaintiff was the husband of *Cornelia*, one of the daughters of *Cornelius M. Van Alstyne*, and that there were children living of the marriage between him and Cornelia ; that the defendant held the premises in question under title derived from *Cornelius C. Van Alstyne*, the son of *Cornelius M. Van Alstyne* ; and that before the commencement of this suit, the defendant was called upon and informed that the plaintiff *claimed* a part of the premises in question, and was asked what he would do respecting it ; that the defendant said he wished an action might not be commenced, that he would think of it, and let the witness know what he would do ; and that the defendant, neglecting to give an answer, this action was brought. To show the title under which the defendant held, the plaintiff produced a deed of the premises in question from Cornelius C. Van Alstyne (who entered into possession of the premises devised to him) to Jost Spraker, bearing date 9th September, 1813, who, on the 12th April, 1824, by deed conveyed the premises to the defendant ; both were deeds with warranty. The plaintiff, claiming that he was entitled to recover an estate for his own life in an undivided fourth part of the premises, rested his cause. The defendant thereupon moved that he be *nonsuited*, insisting that he had wholly failed in showing title in himself ; and if he had, un-

der the declaration in this cause, he was not entitled to recov- <span>NEW YORK,<br>May, 1835.</span>
er an estate *less than a fee*, nor could he recover *an individ-*
*ed part* of the premises. The defendant also insisted that Van Alstyne
the plaintiff had failed in showing an *actual ouster*, or facts <span>v.<br>Spraker.</span>
amounting to a denial of the plaintiff's title. The judge rul-
ed, that under the declaration in the cause, the plaintiff
could not recover a less estate than an estate in fee, nor could
he recover an undivided part of the premises, and directed a
*nonsuit* to be entered; to which decision the plaintiff except-
ed, and tendered a bill of exceptions, which was duly signed.

A motion was made for judgment in the first cause, and
to set aside the nonsuit in the second. Both causes came on
to argument at the same time, and the opinion delivered by
the chief justice, stating the grounds of the decisions, embra-
ces both causes.

*D. Cady*, for the plaintiffs. The nonsuit must be set aside
in the case against *George Spraker*, according to the decision
of this court in *Harrison* v. *Stevens*, 12 *Wendell*, 170. Upon
the main question: the devises to Martin and Cornelius gave
to each only a *life estate*. There are no words of perpetuity,
and there is nothing in the will from which a *fee* may be im-
plied. The direction by the testator *Martin* and *Cornelius*,
to pay his debts, imposed no obligation but what before ex-
isted. The will was made after the act of 1786, which sub-
jects every man's estate, real and personal, to the payment of
his debts. It was not so at common law; then the *heir* took
the land free of the debts of his ancestor. The creditors of
the testator obtained no new remedy in consequence of the
direction to *Martin* and *Cornelius* to pay his debts; nor are the
devises to them on condition that they pay the debts. Be-
sides, *Martin* and *Cornelius* were *executors*, and as such,
were bound to pay the debts; they were also *legatees*. The
counsel cited and commented upon the following cases: 1
*Coke's Inst.* § 1, (9, *b.*); 2 *Show.* 38; 3 *Kebl.* 49; 4 *East*, 496
6 *Johns. R.* 191; 8 *id.* 141; 9 *id.* 222; 10 *id.* 148; 12
*id.* 389; 14 *id.* 198; 17 *id.* 221; 18 *id.* 31; 2 *Johns. Ch.*
*R.* 624.

NEW YORK,
May, 1835.

Van Alstyne
v.
Spraker.

*M. T. Reynolds,* for the defendants, insisted that the charge of payment of debts was upon the *persons* of Martin and Cornelius, and *not upon the estates* granted to them, and that they therefore took estates in fee by *implication.* He also contended that the words, in reference to the devises of certain portions of the property to Martin and Cornelius, directing the same " to be equally divided between them," carried a fee. He cited 3 *T. R.* 356, 8 *id.* 1, 18 *Johns. R.* 31, and 6 *id.* 185.

*By the Court,* SAVAGE, Ch. J. It has already been decided that a plaintiff in ejectment may recover a less estate than he claims in his declaration ; and that when he claims the whole, a verdict may be rendered for him for an undivided part. Whether an ouster was sufficiently proved in the case against *George Spraker* may be doubtful, but propably more proof would have been given, had not the judge nonsuited the plaintiff, upon the ground that he must recover a fee, or nothing. The main question, that is, whether the sons of the testator, Martin and Cornelius, took under the will an estate *in fee or for life,* seems not to have been raised upon the trial of the suit against *George Spraker* ; in the suit against *Daniel Spraker* that question was distinctly presented, and a verdict taken, subject to the opinion of this court.

It is well settled that to convey by deed an estate of inheritance, words of perpetuity must be used ; but in regard to wills, a contrary rule has been established, and the result of the common law decisions on this point is contained in our revised statutes, 2 *R. S.* 57.§ 5 : " Every will that shall be made by a testator, in express terms, of *all his real estate* or *in any other terms denoting his intent to devise all his real property,* shall be considered to pass all the real estate which he was entitled to devise, at the time of his death." Where express terms are used, denoting the intention of the testator, there is no difficulty ; but where the appropriate terms are omitted, then the doubt arises as to what *other terms* do denote his intent to devise all his real property. Several decisions are to be found in the books, from which rules have been adduced, though they are not all uniform. Chief Justice Tilghman says, in *Morison* v. *Semple,* 6 *Binn.* 97, " The rule is this ;

words which only describe the object devised, give no more than an estate for life ; but words which comprehend the quantum of the estate, pass the fee." The words of the devise, in the case before him, were—I do bequeath and devise unto S. S. *all my real and personal property.* These words are expressly embraced in our revised statutes. That class of cases, therefore, give very little light on the point now under consideration. There is no dispute as to the phraseology of the devises to Martin and Cornelius : they contain no words of perpetuity ; they are mere words of description of the object devised, and do not describe the quantity of the estate ; nor is there any charge upon the estate, or upon the persons in respect of the estate devised, in express terms. Whether there is any such by implication, remains to be seen. An examination of some of the cases on this point may be useful. *Collins' case* 6 *Co.* 16, was as follows : the testator devised part of his estate to his wife for life, after her death to his brother, paying to others small legacies, in all, 45s., and the land was of the annual value of £3. It was held that the brother took a fee ; and this distinction was taken : Had the devise been to the brother, paying legacies out of the profits, he would have taken only an estate for life ; for in that case he could sustain no loss ; but as the devise is, if the brother had died after the payment of the 45s., before reimbursement from the rents and profits; he would sustain a loss ; and as the law will intend that the devise was intended for his benefit, therefore he shall have a fee. This case seems to settle the principle that every devise shall be so construed as to be beneficial to the devisee. Mr. *Cruise,* in his digest, 6 *Cruise,* 276, *tit.* 38, *Devise, ch.* 11, § 48, says, it is a long established rule, in the construction of wills, that a devise with directions that the devisee shall pay a gross sum of it, shall take a fee. This is upon the principle above mentioned; for were the devisee to take only an estate for life, he might die before he received from the land the gross sum he had paid. In *Doe* v. *Fyldes, Cowp.* 841, Lord Mansfield says, this doctrine began when the modification of uses was by way of condition, and charging the devisee with the payment of a gross sum was looked upon as a condition, and the non-per-

NEW YORK, formance was a breach of the condition, for which the heir
May, 1835. might enter. Upon this principle, the case of *Jackson* v. *Mer-*
Van Alstyne *rill*, 6 *Johns. R.* 191, was decided, though there were other
v. points in that case. The testator prefaced his will by declar-
Spraker. ing that for the *settling his temporal estate,* he made his will.
He gave the whole real and personal estate to his wife for
life. " After it shall fall to my children, I will and require
that my three sons, J., W. and J., pay each of them to each
of their sisters £35 a piece;" and added, " if my sons shall
incline to keep the land, and shall not have the ready money
to pay, they have four years to pay this money in," &c. This
clause is not noticed in the opinion of the court. Here was the
word *estate,* which is sufficient to pass a fee. Ch. J. Thomp-
son gave the opinion of the court, and states the first objection
to be, that the real estate is not devised *in fee* to any person.
He proceeds to show the effect of the word *estate,* and the in-
tention of the testator to dispose of his temporal estate ; but
considers the charge upon the real estate as decisive, upon the
principle already stated, that a devisee without words of perpe-
tuity shall take a fee, if he be charged with a gross sum out of
it ; otherwise if payment is to be made out of the rents and
profits. 3 *Bur.* 1623, *per Ld. Mansfield.* He did not consider
this an estate upon condition precedent. It is the charge, and
not the time of payment, which is looked to, for the purpose
of discovering the intention of the testator. The charge here
was upon the persons and not upon the estate, though that
distinction is not commented on, or taken. *Jackson* v. *Harris,*
8 *Johns. R.* 141, has been referred to. In that case, the tes-
tator gave and bequeathed to his son Henry, "all this certain
lot of land which I now possess." He gave several legacies,
at be raised and levied out of his estate. His son Henry and
J. V. were executors, and paid the debts and legacies out of
the personal estate. Here was the same declaration of his in-
tention to dispose of his worldly estate as in the case of *Jack-*
*son* v. *Merrill.* Mr. Justice Spencer, in giving the opinion,
remarks that the charge is on the testator's estate general-
ly—his personal as well as real. It was decided that Henry
took only a life estate, the charge of the debts and legacies
being only contingent upon the real estate ; and to carry a fee,

the charge should be absolute and certain, not contingent. The case of *Jackson* v. *Merrill* was cited on the argument, but not referred to by the learned judge, in giving the opinion of the court; and he declined discussing the difference between a charge on the person of the devisee in consequence of the devise, and a charge on the estate devised. In the case of *Jackson* v. *Wells*, 9 *Johns. R.* 222, the testator gives to his eldest son D. W. "all that part of a lot of land I now live on," without any words of limitation. Another devise was to his son Jeremiah, and to *his heirs* and assigns forever, of all the rest of his estate, he paying debts and legacies. The court say it is clear, upon the established principles of construction, that D. W. took only an estate for life. It is remarked that in the devise to him there are no words of perpetuity, though the testator, from other parts of the will, understood the necessity for such words.

In the case of *Jackson* v. *Bull*, 10 *Johns. R.* 148, this subject was elaborately discussed. The testator says, "I give to my two sons, Joshua and Ephraim, the farm I now live on, to be equally divided between them, and for Joshua and Ephraim to pay my daughters, L., B., M. and S., £20 apiece, to be paid by my executors out of my money and moveables; the debts to be paid out of my estate that I shall die seized of." And he appointed his wife and son Joshua executors. Kent, Ch. J., delivered the opinion of the court, and remarked, that as there were no apt words of limitation, Joshua and Ephraim took only an estate for life, unless a fee can be implied by reason of the charge of the debts upon the estate. It is there said that the distinction which runs through the cases is, that where the charge is upon the estate, and there are no words of limitation, the devisee takes only an estate for life; but where the charge is on the person of the devisee in respect of the estate devised, he takes a fee, on the principle that he might otherwise be a loser. It is added that when the charge is on the person, he takes the estate upon condition of paying the charge; and if he refuses to accept and perform, the devise is void, and the heir may enter. As to what words constitute a charge upon the person and what upon the estate,

NEW YORK,
May, 1835.

Van Alstyne
v.
Spraker.

NEW YORK, there seems to be some difficulty and contrariety of decision;
May, 1835. several of both descriptions of cases are stated in *Jackson* v.
Van Alstyne *Bull.* The criterion undoubtedly is, whether the devisee, by
v. reason of his acceptance of the devised property, becomes per-
Spraker. sonally liable to the payments of the debts and legacies charg-
ed thereon.   If the terms of the devise are, that after debts
and legacies are first paid out of the real estate the testator
devised, &c. there would be no personal liability, and an es-
tate for life only would pass; 8 *T. R.* 497; but if the pro-
perty be devised to the devisee, *he* paying certain sums, then
the devisee, by taking possession of the devised property, would
become personally responsible, and would take a fee; the de-
vise in both cases wanting any words of limitation. 6 *Co.* 16.
8 *T. R.* 1. I will only refer to two other cases decided in this
court, in which this principle has been applied.   The first is
*Ferris* v. *Smith*, 17 *Johns. R.* 221, in partition.  The question
was upon a devise in these words: "I do give and bequeath
to my son Anning, the one equal south half of my land," &c.
Spencer Ch. J., said, there can be no doubt that the will vest-
ed an estate for life only in the devisees. *Jackson* v. *Martin*,
18 *Johns. R.* 31. The testator gave his wife certain property
and privileges from *his homestead farm.*   He then says, "I
give and devise to my second son, Robert, 118 acres of land,
to be taken off the southerly end of my homestead farm, &c.,
*he complying* with the following injunctions," &c. going on
to specify what provisions Robert should make for his mother.
Ch. J. Spencer gave the opinion of the court, and held that
Robert took a fee, expressly on the ground that for a portion
of the provisions for his mother, he was personally liable.
Testing the case now before us by the principles which have
governed previous cases, we look in vain for any personal
charge upon the devisees, Martin and Cornelius.   The testa-
tor makes the support of his wife expressly a charge upon his
*estate*; not on the *persons* of the devisees. He then wills that
all his just debts be paid by Martin and Cornelius, but desig-
nates no fund, and does not make the payment a condition to
the devise. Both Martin and Cornelius were subsequently
appointed executors, and the debts would be paid of course
from the personal estate, if no other direction be given. The

devise to his son *Daniel*, is to him, *his heirs* and assigns for-ever. From this it is apparent that the testator, or the person who drew the will, was aware of the necessity and propriety of those terms, where it was intended to convey a fee. The same remark is applicable to the devises to his daughter Cornelia. Both those devises are also charged with the payment of legacies; and there can be no doubt, I think, that in both those instances the legacies are a *personal charge* upon the devisee. Those devises, therefore, convey a fee, even without the words of perpetuity. The devises to Martin and Cornelius, as if by design, contain no words of perpetuity, nor do they charge the devisees personally with the payment of debts and legacies, or the support of their mother. The word *estate* is not used nor any others but such as are descriptive of the object of the devise, the location on the ground; and not the quantity of interest. It follows, from all the principles applicable to such a case, that the devisees took an estate for life only.

In the case against *George Spraker*, the nonsuit must be set aside, and a new trial granted, costs to abide the event; and in the case against *Daniel Spraker*, the plaintiffs are entitled to judgment upon the verdict.