THESE cases came up at the June term, 1847, before all the judges, on a case stated in the Superior Court, in and for Sussex county; and questions reserved for hearing in banc.
Hugh Smith, by his will (made January 14, 1830, and proved October 5, 1831,) devised to his wife, Elizabeth Smith, "all his real estate, lands and tenements, to be fully enjoyed and possessed by her during her natural life," and "to his relation, whose maiden name was Mary Ann Sloane, the grand daughter of Captain Hugh Smith, (shipmaster,) late of Philadelphia, one-half of all his real estate, after the decease of his wife, Elizabeth Smith; and in case of the death of the said Mary Ann Sloane, before she may lawfully demand the same, then to her heirs and their assigns forever." He also devised "to his relation, whose maiden name was Helen Soane, who was also a grand daughter of Captain Hugh Smith, (shipmaster) late of the city of Philadelphia, the other half of his real estate, after the decease of his wife, Elizabeth Smith; and in case of the decease of his aforesaid relation, Helen Sloane, before she may lawfully demand the same, then to her heirs and their assigns forever. But in case of the death of either of his above named relations, without lawful issue, then to the lawful issue of the survivor." He directed the trustees of the Presbyterian Church, in Lewes, after the death of his widow, "to take care of his real estate, and to advertise in some daily newspaper of general circulation in Philadelphia, for the information of his aforesaid relations and for their heirs, for the term of one year, that they may come forward and possess the same, in the manner and order heretofore specified. But in case neither of his aforesaid relations or their heirs should come forward, in the space of one whole year after the commencement of such public advertising, or signify their lawful claim, then the aforesaid real estate to be and remain the property of the said Presbyterian *Page 197 
Church," and he set apart a whole year's rent of the estate, after the death of his widow, to defray the expenses of advertising and other expenses of information of his relatives.
The defendant, Laban L. Lyons, purchased from Sarah Sleeth, (late Sarah Sloane, called in the will Mary Sloane,) her moiety in the real estate of Hugh Smith, of Sussex, deceased, which was devised her by the will of the said Hugh Smith.
Lyons preferred his petition in chancery, setting forth the will and these facts, and praying partition of the lands devised. Partition was decreed; and the estate being incapable of division, was valued and assigned to him, on his entering into a recognizance conditioned to pay to Elizabeth Smith, the widow of Hugh Smith, the interest on $550 11, (half the valuation, deducting costs,) during her lifetime, and upon her death to pay to the other parties entitled their respective shares, c.
Elizabeth Smith, the widow, died July 3, 1844, and suit was commenced on the recognizance, within the year thereafter.
Helen Sloane married George Street, and died in April, 1828, leaving to survive her as her heirs-at-law the plaintiff, Edward Street and Louisa, the wife of Charles Hoffner.
The question submitted was, whether Edward Street and Charles Hoffner and wife, or either of them, was entitled to recover on the recognizance aforesaid, and in what amount and proportion of the same.
Raybold and Comegys, for plaintiffs, contended: —
1. That by the death of Helen Sloan, before the making of the will, her children were entitled to the estate devised, immediately on the decease of the widow of testator.
2. The word "heirs," used by the testator in connexion with the devise to Helen Sloan, is a descriptio personae, and her children are entitled under the description.
3. The plaintiffs are entitled in equal shares, to one moiety or half part of the sum secured by the recognizance of defendant; they having survived the widow of said testator. (Jarm. on Wills, 293, 491; 2 RawleRep. 29, Sloane vs. Hands; 1 Fearne on Rem., 79, 201, note; 2 Ambler, 272; 2 Disauss., 33; 3 Barr. Rep., 304; 2 Fearne. Rem., 202, § 382 to 7; 4 Kent's Com., 220; 1 Roper on Legacies, 329, 330, 4; 2 Dickens' Eng.Chan. Rep., 551; 1 P. Wms., 274; 2 Atk., 220; 6 Bac. Abrid., 242-3; 6 Dean's Rep., 53; *Page 198 
2 Vern. Rep. 378, 511; 2 Yeates' Rep., 363, 578; 2 Penn. Rep., 754; 11 Pick. Rep., 530; 1 Cox. Ch. Rep., 183; 3 Mylne Keene, 257; 2 Dessaus. 314.)
Mr. Layton, contra, made the following points: —
1. Helen Street, late Helen Sloane, being dead, at the time of the making of the will of Hugh Smith, the devise to her was a void devise. (4 Kent's Com., 526; 4 Bac. Ab., title Legacies, 391; 1 Bro. Ch. Rep., 84, Maybank vs. Brooks; 9 Vez., 575; 1 Harr. Rep., 524, Doe vs. Hedges; 13 East., 526;Willes Rep., 293, Doe vs. Underwood; 3 Maule Selw., 300.) And as to cases of legacies and devises, (Roper on Legacies, 320;Plowd., 340; 6 Cru. Dig., 163, § 20, c.)
2. That the estate devised in the first instance to Helen Sloane, was an estate in fee simple, qualified by subsequent words, and reduced to an estate in fee tail. (6 Cru. Dig., 266-7; 1 Harr. Rep., 439; 2 Blk.Com., 101; 6 Cru. Dig., 220; 3 Yates, 187; 6 Binn. 97; 6 Johns., 185; 1Wash. Rep., 96; 1 Harr. Rep., 223.)
3. A republication of a will, after the death of a devisee in tail, will not give any estate to the issue in tail. (6 Cru. Dig., 168, § 28, 29; 4 Term Rep., 601, Doe vs. Kett.)
4. That by the death of Helen Sloane, in the life time of the testator, the property devised to her did fall back, or remain in the estate of said testator, as undivided property. (4 Kent's Com., 526; 4Bac. Ab., title Legacies, (E.,) 391; Prec. in Ch. 470-1; 9 Vez., 566; 2Vern., 378; Ib., 653, 744; 3 Atk., 573; 3 Bro. Ch. Rep., 224; 2 Blk.Com. 391, 336.)
Judge Milligan delivered the opinion of the court.
The single question is, what estate did these plaintiffs take under the will? This is answered by determining another question, viz: did they take by descent, or did they take by purchase ?
The word heirs, is sometimes a word of limitation, and at others only a word of description.
Wherever it is employed to define the character of the estate, or to limit its operation, it is then a word of limitation.
In the present case, it is only used as a word of description, referring merely to the persons who were to enjoy the estate of the testator, upon the death of his widow.
Helen Sloane, the mother of plaintiffs, died in the life time of the *Page 199 
testator, and as to her, the devise was absolutely void. Her children, therefore, could not claim through her, but they take directly from the testator himself; in other words, they take by purchase, and were entitled to an estate in fee. Had their mother, Helen Stone, lived until the decease of Hugh Smith, she would have taken only an estate tail; the estate in fee first given to her, having been reduced by the subsequent words of limitation. But she dying before the will went into operation, it was as to her an invalid devise, and her children took in equal moieties and in fee, not through her by descent, but directly from Hugh Smith, the testator, by virtue of the devise.
It is the judgment of this court, therefore, that the plaintiffs are entitled, each in fee, to an undivided moiety of that part of the estate which was devised to Helen Sloane; and they direct a judgment to be entered accordingly.